**ALBERS, Plaintiff-Appellee, v. CONTINENTAL CASUALTY COMPANY, Defendant-Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 7172.  Decided December 5, 1949.

Nichols, Wood, Marx & Ginter, Cincinnati, Leonard D. Slutz, for plaintiff-appellee.

Long & Bloom, Cincinnati, for defendant-appellant.

## OPINION

By MATTHEWS, J.:

The plaintiff-appellee recovered a judgment in the Municipal Court of Cincinnati upon an insurance policy, providing for indemnity for loss resulting from bodily injury effected through accidental means. The specific provision of the policy upon which the plaintiff-appellee relied read as follows:

" 'Injury' as used in this policy means bodily injury which is the sole cause of the loss and which is effected solely through accidental means while this policy is in force." As the result of an injury described as a pneumo-thorax, he required medical attention which cost him the amount for which he was awarded judgment. This appeal is from that judgment.

The trial was conduct without the intervention of a jury and the trial judge made a specific finding of facts and conclusions of law, upon which the judgment was based. However, we have before us a bill of exceptions containing all the evidence by which the soundness of the finding of facts must be tested.

The defendant-appellant asserted that the plaintiff-appellee had failed in two respects essential to his recovery in this case. The first was that there was no evidence of injury effected through accidental means. The second was that the plaintiff-appellee had failed to make proof of loss within the time required to fix liability under the terms of the policy, or proof of waiver of such notice. The special finding of the trial court was adverse to the defendant-appellant's contentions in both respects.

We have examined the bill of exceptions and are of the opinion that the finding on the subject of waiver of notice is supported by the evidence.

The only issue left for consideration is whether there is any substantial evidence to support the finding that the plaintiff-appellee sustained a bodily injury, effected solely through accidental means.

Two medical experts testified—one called by the plaintiff-appellee, and one by the defendant-appellant. While the injury was described in the bill of particulars as a spontaneous pneumo-thorax, these experts differed sharply on the dis-

tinction between a spontaneous pneumo-thorax and a traumatic pneumo-thorax. They seemed to agree that a pneumothorax consists in a rupture or lesion of the walls of the lungs resulting in the escape of air from the lungs into the thoracic cavity, in which the lungs are suspended. The expert called by plaintiff-appellee testified that the two phrases were not mutually exclusive, that spontaneous pneumo-thorax may be either traumatic or non-traumatic. He placed the injury to the plaintiff-appellee in the traumatic class. In view of this testimony, the finding that the plaintiff suffered a bodily injury is supported by sufficient evidence and narrows the issue before us to the single question of whether that injury was effected solely through accidental means.

The answer to that question depends on the proper interpretation of the plaintiff-appellee's own testimony.

Shortly before December 22nd, 1947, the plaintiff-appellee had been found in good health by a competent physician who had subjected him to a general physical examination. On that day he attended a luncheon of the Knights of Columbus at the Metropole Hotel in Cincinnati. It was at that luncheon that the event happened which is the basis of the plaintiff-appellee's claim. We quote his description of the occurrence:

"A. Well, on that particular day I was preparing myself for the chairmanship of a program which we were to disclose the following week, and naturally I was busying myself about the luncheon room, and I left my table, after I had sat down to eat my luncheon, and I hadn't yet started when the thought came to me that I hadn't approached several gentlemen at the table adjacent concerning the program we were to have the following week. I went to that table. Inasmuch as the luncheon was already under way I stooped down from my standing position to speak to these men who were seated at the table and I placed my arms around two of them so I would get my head down so that—

"Q. Who were these men, so you remember?

"A. Frank Ramacher, Ed Waldvogel and Ed in a humorous kind of way, in response to my request made a joking kind of statement and we all got a big kick out of it at the table. It caused me to laugh heartily, harder than I usually do and as I laughed I had my arms stretched out, in a stooping position. I began to straighten up and I felt a terrible pain in my back between my shoulders. I didn't know whether I had a sudden attack of heartburn or what, or what the pressure was, but I felt terrible pressure like that. I didn't

want to make a show of myself so I went back to my table and sat down, Vincent Ruthemeyer sitting to my left I said to him—

   *    *    *    *

"A. Well, Vincent Ruthemeyer was sitting to my right and I began getting weaker and under more severe pressure. I couldn't imagine what was wrong and with this pressure began to cramp and get nauseated, and it went up through my neck and the side of my face. I felt like I was getting paralyzed."

He consulted two doctors who were present. After leaving the luncheon meeting, he consulted a chiropractor on the same day and when he reached his home he called his physician who attended him during the resulting disability. No issue is made as to his disability or as to the reasonableness of the medical expense incident thereto.

Perhaps it will clarify the issue some by excluding two categories. We are not considering the terms of an health insurance policy. If we were, we would have no difficulty in affirming this judgment. It is not sickness that creates liability under the policy which we are considering. It is not injury generally, but bodily injury effected solely through accidental means that creates that liability.

Nor are we concerned with a policy that limits liability to injuries effected by external means or violence. If it appears that the injury was occasioned by accidental means, the absence of external violence does not preclude a recovery.

Nor are we helped by cases construing the provision in the Constitution empowering the legislature to provide for compensation to workmen "for injuries occasioned in the course of their employment," and the statutory provisions for compensation for injuries or death "in the course of employment."

Neither the Constitution nor the statute expressly limits compensation to injuries caused by accidental means, and the courts have not so construed them. In such cases the courts are called upon to distinguish between "injury" and "disease" and whether the disability—injury or disease—has a causal relation to the employment. As the Court said in **Malone v. Industrial Commission, 140 Oh St, 293,** at **300:** "And this Court takes the further position that accidental and traumatic injuries, having the other essential elements of a compensable injury, are compensable whether they are the result of accidental means or the result of the mishap itself proximately causing the harm or damage."

We are concerned here with the interpretation of the language of a contract and applying the disclosed meaning to

the facts. As this contract was prepared by the defendant-appellant, it must be construed most strongly against it.

Before considering the precedents on such contracts, let us analyze the plaintiff-appellee's testimony.

We find him in attendance at a luncheon incidentally engaged in arranging a program for a meeting the following week and in doing so going from table to table in the dining room. After these visits he sat down at a table and was about to start eating his lunch when he discovered he had overlooked visiting one table at which certain gentlemen were seated. Thereupon, he left his table and went to that table to talk to those gentlemen who were at that time engaged in eating lunch. Now up to this time, surely nothing unforeseen, unexpected, or accidental had occurred. As the gentlemen to whom he wished to talk were seated eating their lunch, he stooped down to get his head on an appropriate level with theirs and further to place himself in a still better position to hear and be heard over the din of the dining room, he placed an arm around two of the men with whom he intended to engage in conversation. It is not suggested that there was anything in this that was involuntary or unintentional. Now when the three men were in that position, the plaintiff made a request of one of the men, who in response "in a humorous kind of way—made a joking kind of statement" which caused all of them to laugh; the plaintiff harder than he usually did. The plaintiff was accustomed to laughing at jokes and his reaction in this case was not unexpected. Certainly, up to this point nothing unexpected or out of the natural course of things had transpired. The humor seems to have been invited and there is no suggestion that the humor produced a paroxysm, or that the laughter was uncontrollable. The mirth may have been uncontrolled, but not uncontrollable. While he was still laughing he started to straighten up. However, right at this point he felt a terrible pain in his back between his shoulders. As later disclosed the pain resulted from a pneumo-thorax produced by a lesion or rupture of the lung membrane.

It is impossible to reach any conclusion other than that the injury to the lung was the only accidental occurrence in this whole recital. It was not produced by any prior happening of an accidental nature. There was nothing abnormal—nothing unusual in what had taken place. It was the effect that was unusual.

Defendant-appellant's counsel rely confidently upon **New Amsterdam Casualty Co. v. Johnson, 91 Oh St, 155,** in support of its position. The plaintiff-appellee's counsel frankly admits

his difficulty because of that case, but seeks to distinguish it. In our opinion he has failed. We can see no distinction and the case has been frequently cited with approval. We quote the syllabus of that case:

"Where an insured holding an accident policy indemnifying him against bodily injuries which independently of all other causes are effected solely and exclusively by external, violent and accidental means, suffers an injury due to the dilation of the heart following the voluntary taking of a cold-water bath, it will not be considered as the result of an accident where under the circumstances attending the dilation, there is no evidence that anything occurred which the insured had not planned or anticipated, excepting the dilation and its consequences."

In **Burns v. The Employers' Liability Assurance Corp., 134 Oh St, 222,** the Court considered a policy insuring against bodily injury caused solely by accidental means. Drinking water had become infected by the breaking of a sewer pipe and as a result the plaintiff's husband had died of amebic dysentery. While the case could, perhaps, have been decided on the sole ground that decedent had died from disease rather than bodily injury, the court took occasion to consider generally the requirement for recovery under an accident policy, quoted with approval from New Amsterdam Casualty Co. v. Johnson, supra, and in its own language said: "The element of accident must be found to exist in the means or cause which produced the bodily injury rather than in the result."

The Supreme Court was called upon again to apply the language of an accident policy similar in all material respects to the policy here under consideration in **Mitchell v. New York Life Insurance Co., 136 Oh St, 551.** It appeared that the plaintiff's husband had died as the result of a ruptured sigmoid caused by a self-administered enema by connecting a rubber tube to a faucet in a bathtub. The trial court found for the plaintiff and the Court of Appeals affirmed. The plaintiff claimed that the city water pressure was suddenly increased, and that this supplied the accidental means by which the sigmoid was ruptured. The Supreme Court found that there was no evidence of any increase in the water presure and no evidence that the decedent did not exercise control over the flow of water which caused his injury. Thereupon, the Supreme Court reversed the judgment on the authority of New Amsterdam Casualty Co. v. Johnson, supra. The court also cited and commented on several other cases

construing policies insuring against injury caused by accidental means and while recognizing a conflict in the authorities in other jurisdictions reached the conclusion that New Amsterdam Casualty Co. v. Johnson was in accordance with the great weight of authority. Judge Hart handed down a dissenting opinion in that case, but he agreed that to recover on this kind of a policy, the proof must show not only an accidental result, but also that that result was caused by accidental means.

In **Hassay v. Metropolitan Life Ins. Co., 140 Oh St, 266,** a policy insuring against bodily injury or death caused solely through external, violent, and accidental means, was before the court. There was no doubt that the insured's death had been caused by external and violent means. The insured's wife owned a house which was wrecked by a terrific explosion. After the explosion the insured's body, badly burned and mangled, was found near the wrecked building. A rag smelling of gasoline was lying near his body. The court held that upon proof of death by external and violent means, the law raises a prima facie presumption that it was accidental, and that when the evidence is susceptible of different interpretations, a jury issue is presented. The jury had found for defendant and the judgment for it was affirmed. New Amsterdam Casualty Co. v. Johnson, supra, was approved again. Judge Hart delivered a dissenting opinion, but he wrote into it an approval of New Amsterdam Casualty Co. v. Johnson.

It should perhaps be noted that there is no requirement of external and violent means in the policy here under consideration, but there is the requirement of bodily injury effected solely by accidental means. There was no proof of external and violent means in this case and, therefore, no presumption arises that the means of injury was accidental. The burden of so proving was on the plaintiff and he was not aided by any presumption.

In the presence of these pronouncements by the Supreme Court, we find it unnecessary to inquire into the state of the law in other jurisdictions on the subject, or to resort to any original reasoning.

For these reasons, the judgment is reversed, and the cause remanded, with instructions to enter final judgment for the defendant.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion & judgment.